FILED

2024 Mar-25  PM 03:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DARRYL LEE GILLIAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 5:21-cv-718-LCB** |
| | ) | |
| **CHRISTINE WORMUTH,** | ) | |
| **Secretary, UNITED STATES** | ) | |
| **DEPARTMENT OF THE ARMY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Darryl Lee Gilliam, a civilian employee of the United States Department of the Army, initiated this action by filing a *pro se* complaint for retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Doc. 1). He subsequently obtained representation and filed an amended complaint. (Doc. 18). In response, Defendant filed a partial motion to dismiss. (Doc. 19).

The Court ruled that while Plaintiff's work assignment to work under the supervision of a particular supervisor was a personnel action, he did not adequately plead how the assignment was more than "petty and trivial," such that "a reasonable employee, standing in plaintiff's shoes, would have felt dissuaded from filing a complaint of discrimination." (Doc. 25 at 6 (quoting *Rainey v. Holder*, 412 F. App'x

235, 238 (11th Cir. 2011))). Moreover, the Court found that Plaintiff did not adequately plead the alleged causal link between his protected activity and the work assignment and did not sufficiently allege that his "downgraded performance appraisal" was an adverse employment action. (*Id.* at 7). Accordingly, the Court found Defendant's motion meritorious and ordered Plaintiff to file a second amended complaint. (*Id.* at 8).

In Plaintiff's second amended complaint, he alleges experiencing retaliation because he served as a union representative for Edward Smith on May 10, 2017, and for Marilyn Williams on September 21, 2017, during their grievances. (Doc. 26 at ¶ 8(a)-(b)). Plaintiff alleges that his representation of Smith and Williams continued "over time." (*Id.*). In addition, Plaintiff also alleges he experienced retaliation because he filed his own grievance on September 13, 2017. (*Id.* at ¶ 8(c)).

Plaintiff claims that Managers Shirley Martin and Michelle Cross knew about Plaintiff's representation and grievance because on May 4, 2017, Plaintiff's union notified his "management, including Cross," that he had been appointed as a union official which involved representing employees in discrimination claims against Defendant, and because Plaintiff had to seek approval from Cross to take leave to handle union business and attend union-related training. (*Id.* at 13).

Then in February 2018, Martin and Cross assigned Plaintiff to report to an allegedly abusive supervisor, Joe Pollard. (*Id.* at ¶ 9). Plaintiff alleges the two

managers knew that he had complained about Pollard harassing him in the past to such a degree that he requested a transfer from Pollard's supervision, which was granted by neither Martin or Cross on November 30, 2016, and that Pollard has a disciplinary record for being abusive to employees. (*Id.*).

On April 16, 2018, Plaintiff filed a grievance due to Pollard's allegedly abusive conduct toward him. (*Id.* at ¶ 10). On June 1, 2018, Martin and Cross issued Plaintiff a "downgraded performance appraisal" which contained derogatory and false comments pertaining to Plaintiff's work performance. (*Id.* at ¶ 12). Plaintiff claims the appraisal remained in his personnel record for two years and was accessed by subsequent hiring officials in link with positions for which he applied and was not selected. (*Id.*).

Finally, Plaintiff claims that the alleged adverse treatment he received—being assigned to report to an abusive supervisor and receiving a "downgraded performance appraisal"—was causally related to him serving as a union representative and filing his own grievance in September 2017. (*See id.* at ¶ 14). Specifically, Plaintiff states Defendant, through Martin and Cross, was "aware of Plaintiff's conduct, took unjustified adverse action against him without any legitimate non-retaliatory reason and on at least one occasion did so within five months or less of Plaintiff's most recent protected conduct which was ongoing." (*Id.*).

Defendant, in turn, filed another motion to dismiss, contending that Plaintiff has not established the elements of a claim for retaliation, thereby failing to state a claim upon which relief may be granted. (Doc. 29). Defendant's arguments in her second motion to dismiss echo the arguments in her first: that the assignment under Pollard is not an adverse personnel action and that Plaintiff cannot show a causal link between his protected activity and the alleged adverse employment actions. (See *id.*). Plaintiff opposes the motion and, in the alternative, asks the court for leave to amend the complaint. (Doc. 34).

## I.  STANDARD OF REVIEW

The relevant portion of Federal Rule of Civil Procedure 12 permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  That rule must be read together with Rule 8(a), which requires that a pleading contain only a "*short and plain statement* of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  As the Supreme Court stated in *Iqbal*:

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  [*Twombly*,]

550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

To survive a motion to dismiss [founded upon Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*.  *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.* at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  409 F.3d at 157–58.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth.
While *legal conclusions* can provide the framework of a complaint,
they must be supported by factual allegations. *When there are well-
pleaded factual allegations, a court should assume their veracity and
then determine whether they plausibly give rise to an entitlement of
relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in

original, other alterations supplied).

## II. DISCUSSION

In order to state a claim for retaliation under Title VII, a plaintiff must show

that he: "(1) engaged in statutorily protected activity; (2) suffered an adverse

employment action; and (3) established a causal link between the protected activity

and the adverse action." *Malone v. U.S. Att'y Gen.*, 858 F. App'x 296, 303 (11th

Cir. 2021) (citing *Bryant v. Jones*, 575 F.3d 1281-1307-08 (11th Cir. 2009)). "In

the context of a retaliation claim, an adverse employment action is one that 'well

might have dissuaded a reasonable worker from making or supporting a charge of

discrimination.'" *Malone*, 858 F. App'x at 303 (quoting *Burlington N. & Santa Fe

Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). In federal-sector cases, in order to

establish a causal link between the protected activity and the adverse action, a

plaintiff must show that his protected activity *played a role* in the adverse personnel

action. *See Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1205 (11th Cir.

2021).

Defendant does not contest the first element — *i.e.*, that Plaintiff engaged in protected activity. And although Defendant does not dispute that both Martin and Cross knew about Plaintiff representing his co-workers and filing a grievance in 2017, the Court finds Plaintiff only alleges facts to support that Cross plausibly knew about him representing other union members. Specifically, he alleges how the union notified "management, including Cross," that he had been installed as a union official which involved representing employees during the grievance process and he sought leave from Cross to handle union business and attend union-related training. (Doc. 26 at ¶ 13). The allegation that the union notified "management" about Plaintiff's appointment does not plausibly suggest that Martin knew about Plaintiff representing other union members, especially because he made it a point to emphasize that the union notified Cross in particular but mentioned nothing specifically about Martin. Similarly, his allegation does not plausibly suggest that either Martin or Cross knew about Plaintiff filing a grievance in September 2017 just because they are managers. Plaintiff makes no specific allegation about how the grievance process works. Furthermore, he makes no allegation that Martin or Cross were the targets of the grievance or responsible for resolving it.  Relatedly, Plaintiff alleges he filed a grievance on April 16, 2018, but does not allege that either Martin or Cross knew of this grievance at the time they issued him the downgraded performance appraisal.

As for the second element, Defendant does not appear to dispute that Plaintiff suffered an adverse employment action when he received the downgraded performance appraisal. In the Court's previous ruling, it discussed how Plaintiff had not sufficiently alleged that his appraisal was an adverse employment action because he made no allegation that the appraisal resulted in a loss of pay or benefits or further discipline. (Doc. 25 at 7 (citing *Rainey*, 412 F. App'x at 238)). Plaintiff cured this deficiency in his second amended complaint by alleging that the "appraisal remained in [his] personnel record for two years and was accessed by subsequent hiring officials in link with positions for which [he] applied and was not selected." In other words, Plaintiff alleges the appraisal ostensibly played a role in him not being selected for positions that he applied for.

Defendant solely argues that Plaintiff's assignment to work under the supervision of Joe Pollard was not an adverse personnel action, likely because it has a closer temporal proximity to Plaintiff's protected activity. (Doc. 29 at 7-10). As mentioned previously, the Court has already ruled that Plaintiff's assignment to work under the supervision of Pollard is considered "personnel action" pursuant to 5 U.S.C. § 2302(2)(A), stating that "[t]he Civil Service Reform Act of 1978, which governs federal employment, broadly defines a 'personnel action' to include most employment-related decisions, such as appointment, promotion, *work assignment*, compensation, and performance reviews." (Doc. 25 at 6 (quoting *Babb v. Wilkie*,

8

140 S. Ct. 1168, 1173 (2020) (emphasis added) (citing 5 U.S.C. § 2302(a)(2)(A))).

Defendant states in a footnote that she preserves her argument that such conduct is

not a personnel action. (Doc. 29 at 9 n.3). However, Defendant has not presented

the Court with any new argument as to why it should deviate from its previous ruling.

Defendant then argues Plaintiff "does not allege that his reporting to and/or

working with Pollard had any effect on the terms, conditions, or privileges of his

employment," and thus is not an adverse action. (*Id.* at 10). Title VII's antiretaliation

provision forbids an employer from discriminating against an employee "because he

has 'opposed' a practice that Title VII forbids or has 'made a charge, testified,

assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting § 2000e–

3(a)). In other words, the antiretaliation provision seeks to prevent an employer from

interfering, through retaliation, with an employee's efforts to secure or advance Title

VII's guarantees. *Id.* at 63. And because "[a]n employer can effectively retaliate

against an employee by taking actions not directly related to his employment or by

causing him harm outside the workplace," the antiretaliation provision "is *not limited*

to discriminatory actions that [only] affect the terms and conditions of employment."

*Id.* at 63-64. (emphasis added) (citation omitted); *see also id.* at 70 ("Our holding

today makes clear that [courts are] not required to find that the challenged actions

were related to the terms or conditions of employment.")

Still, the antiretaliation provision only protects an individual from retaliation that produces an injury or harm. *Id.* at 67. Meaning, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," and otherwise "'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (citation omitted).

Thus, when analyzing alleged retaliatory acts, "it is important to separate significant from trivial harms." *Id.* "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)) (citation omitted). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* (citation omitted).

The standard is phrased in general terms because context matters and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998).

In *Burlington Northern & Santa Fe Railway Co. v. White*, Burlington questioned the statutory significance of the harm particular retaliatory acts caused. 548 U.S. at 70. Burlington argued that a reassignment of duties cannot constitute retaliatory discrimination where, both the former and present duties fall within the same job description. *Id.* The Supreme Court disagreed because "[a]lmost every job category involves some responsibilities and duties that are less desirable than others" and "[c]ommon sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 70-71. The Court clarified, however, that a "reassignment of job duties is not automatically actionable," and "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances."'" *Id.* at 71 (quoting *Oncale*, 523 U.S. at 81); *see, e.g.*, *id.* at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children," and "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight . . .[,] [b]ut to retaliate by excluding an employee from a weekly training lunch that contributes

significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." (citations omitted))

Although Plaintiff does not need to allege that his work assignment to Pollard had any effect on the terms, conditions, or privileges of his employment, the Court need not engage in this analysis because even if it agreed that Plaintiff's assignment to Pollard was an adverse employment action, he could not show a causal link between his protected activity and the work assignment.

"The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Moss v. St. Vincent's Health Sys.*, No. 22-13956, 2024 WL 729953, at *4 (11th Cir. Feb. 22, 2024) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). "The plaintiff may prove causation by showing that the employer knew of her statutorily protected activity and there was a close temporal proximity between this awareness and the adverse employment action." *Id.* at *5 (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)). "But mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." *Id.* (citing *Breeden*, 532 U.S. at 273). "Thus, in the absence of other evidence tending

to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Id.* (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004)).

Furthermore, "[a] decisionmaker cannot have been motivated to retaliate by something unknown to her." *Moss*, 2024 WL 729953, at *4 (citing *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020)). "An argument that the decisionmaker must have known about the protected activity is too speculative because evidence that she could have known about it is not the same as evidence that she did." *Id.* (citing *Martin*, 959 F.3d at 1054).

As mentioned before, Plaintiff does not allege that either Martin or Cross knew of his 2018 grievance at the time they issued him the downgraded performance appraisal, and thus, the Court finds they could not have been motivated to retaliate based on that protected activity. In addition, Defendant makes this argument in her motion, and Plaintiff failed to respond to it. (*compare* doc. 29 at 13 n.4, *with* doc. 34); *see also Singh v. Royal Caribbean Cruises Ltd.*, 576 F. Supp. 3d 1166, 1192 (S.D. Fla. 2021) ("Generally, '[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned.'" (alteration in original) (quoting *Jones v. Bank of Am., N.A.*, 564 Fed. App'x 432, 434 (11th Cir. 2014)).

Now, looking at Plaintiff's most recent protected activity—representing co-worker Williams as a union representative beginning on or about September 21, 2017—and spotting him the February 2018 work assignment as an adverse employment action, there is a five-month disparity between the two events. Indeed, the Court understands that the representation of Williams continued "over time," but Plaintiff does not adequately allege how long he represented Williams or when Cross learned of him representing Williams. Thus, the Court can only assume that Cross learned of Plaintiff representing Williams on September 21, 2017. Moreover, Plaintiff argues in his brief that "an adverse action . . . occurred approximately four months after his most recent protected activity." Even accepting this as true, a four-month disparity does not establish a causal link. *Thomas*, 506 F.3d at 1364 (citing *Breeden*, 532 U.S. at 273).

Recognizing temporal proximity alone does not suffice, Plaintiff argues other evidence exists to establish a causal link. First, he points to his allegation that the adverse employment actions were taken with specific knowledge of his protected conduct. As previously mentioned, the Court credits Plaintiff for this allegation in connection to Cross having knowledge that he represented Williams. Indeed, Plaintiff could not prove causation without alleging that a decisionmaker had knowledge of his protected activity, but that allegation does not establish a causal link because there is a substantial delay between the protected activity and adverse

employment actions. Second, Plaintiff argues that Martin and Cross assigned him to work for Pollard even though they knew of Pollard's abusive history. Outside of Plaintiff's allegation that Martin and Cross knew of Pollard's abusive history, the complaint contains no other facts to support that Martin and Cross assigned Plaintiff to Pollard with that knowledge in mind. And even accepting that allegation as true, the Court finds that it is not enough, in combination with the temporal proximity, to show a causal link between him representing Williams and his assignment to Pollard. Third, Plaintiff argues that "the downgraded performance appraisal was unjustified," but this is also an unsupported allegation. Finally, he contends that "the adverse actions were causally related to his protected activity," which is a legal conclusion left for this Court to decide. And the way Plaintiff's second amended complaint is currently drafted, the Court does not find that the adverse actions were causally related to his protected activity.

Alternatively, Plaintiff asks the Court for leave to amend. Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires," but the Eleventh Circuit has deemed that it is "not at an automatic right." *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir.1982) (citation omitted). Ultimately, district courts "have broad discretion in permitting or refusing to grant leave to amend." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). "The thrust of Rule 15(a) is to allow parties to have their claims heard

on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, district courts "may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162-63 (11th Cir. 2019) (citing *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004)). "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (internal quotation marks omitted).

Here, Plaintiff has had the opportunity to amend his complaint twice. (Doc. 18 & 26). Yet, Plaintiff's amended complaints have been unable to show a causal link between his protected activity and adverse employment actions. Specifically, the temporal proximity between the two events, in combination with other evidence, are insufficient. Because Defendant argued that each amended complaint lacked allegations to show a causal link, and Plaintiff had two opportunities to correct this deficiency, allowing an amendment would be futile.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss. (Doc. 29). The Court will enter a separate final judgment pursuant to Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this March 25, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE